FILED

2010 JUL 28 AM 10: 29

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARA JADE COTON

Plaintiff

CASE NO:8:07-CV-01332-T-TGW

ROBERT AUGUSTUS BURGE
DBA TVX HOMEVIDEO

Defendant

**DEFENDANTS REQUEST FOR COURT TO RECONSIDER DEFENDANTS REQUEST FOR POSTPONEMENT AND TO FILE EVIDENCE RELATED TO DAMAGES.**

It's apparent neither the court nor the Plaintiff's attorney, depend on the VA for medical care. If they did, they would know veterans do not determine when they see the doctors. If you call the VA to make a doctors appointment they tell yo to go to Triage (emergency room for care). Once there, you are treated and if follow up is needed appointments will be made for you at a later date usually within six weeks to 3 months.

Defendant did not request to have the extensive tests that kept me from appearing in court. They were the direct response from the VA after having three emergency visits to the hospital for congestive heart failure in the last three months. Te last one was 5/29/10.

**<ins>Failure to meet appointments set could mean the difference in timely future treatment. Defendant has little alternative to choose. He's not playing legal games of motions and more motions, he's playing with life ot death.</ins>**

As for Plaintiff attorney to accuse Defendant of delaying tactics, I would hope the Court remembers it was plaintiff's attorney that waited nine months from the time he achieved a default Judgment to file his request for damages. Defendant Burge has never failed to show up for hearing in the past even when they were detrimental too his health. He wasn't ware of any local rules that required him to file a point of law for his request. The fact is out I will not be able to come to Tampa. My Medical situation is out of control and for the next three months I will be working to gain control of that situation.

1

AS FOR THE EVIDENCE I AM FILING WITH THE COURT, PLAINTIFF'S ATTORNEY HAS IT ALL IN HIS FILES AND PLAINTIFF HAS MORE THEN ENOUGH TME TO ANSWER THE EVIDENCE I'M SUBMITTING.

### 1. COPYRIGHT

Plaintiff is claiming proof of registration is not required for works that are created in a country outside of the United States that is a signatory to the Berne Convention under 17USC. 412.

    A. Defendant answers to questions related to request for documents were as follows.

    1. Question 10: Plaintiff is unaware of any document that can "prove" that she is the model in the photograph entitled, "No Easy Way Out." That is the subject matter of this action, other then the photo.

    2. Question 12: Plaintiff is unaware of any documents that can "prove" that she "owns" her own legal name.

    3. Question 13: No such document exists other then the photograph entitled, "No Easy Way Out." That is the subject matter of this action. Plaintiffs copyright in that work arises by operation of law and no document is required to prove or establish such copyright.

    B. Section 412 Denies any award for remedies of statutory damages or attorney's fees where infringement of copyright in an unpublished work began before registration. Therefore Plaintiff is entitled to at best according to:

    C. USC 504: 1B Actual damages and profits. The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other then the copyright.
The Revenues and cost of releasing the film are as of follows.

    1. REVENUES; total DVD'S sold were 133 at @ average wholesale price of $6.00 bringing in total revenue's of $ 798.00. (see exhibit "A")

    2. EXPENSES

 $ 500.00 authoring, corrective editing and color timing( Paid to Terry Chambers, film editor.
 100.00 DVD Cover;  (Paid to A. Cohen)
 200.00, production of glass master ( Paid to L&M West.
 <u>339.00, duplication of 1000 units   (Paid to L&M West</u>
 Total cost – $1139.00

3. This caused a net loss of $ (341.00.)

4. Based on the above calculations in which Plaintiff's attorney has in his files, Plaintiff would not be entitled to any compensation, however Defendant Burge offered Plaintiff's attorney $ 300.00 in a letter dated July 7, 2007. See Exhibit "B" paragraph 10

5. The offer was refused. Plaintiff's attorney demanded damages of $250,000.00. Later before arbitration Plaintiff was offered $ 2000, 00 by Defendants attorney.

D. Federal Rule of Civil procedure 68; A party that fails to exceed a rule 68 offer is required to pay the costs of the offering party. In *Marek v. Chesny*, 473 US 1,8,9 (1985), the Supreme Court analyzed the purpose and policy of Rule 68 and concluded that the cost should include attorney's fees where the underlying statue would permit attorney's fees to the prevailing party.

E. Defendant has no proof nor has she offered any proof other then her own statements as to when the photograph in question was first published or what country the photo was published. Exhibit in plaintiff original filing "A" is copyright notice added after the fact and for the sole benefit of this lawsuit. The proof of that can be seen in a photo Plaintiff Lara Jade had previously placed on her Deviant ART website that she failed to delete and was recovered by plaintiff on 8/16/07 and first discovered during early February 07.  Note, Defendant Burge originally discovered the photo approximately two days after Plaintiff first notified TVX via email that the company had stolen her photo.

 1.. (See exhibit C-CI) Note there is not a copyright notice or watermark on page I and or the, 8/15 by 11, blow up on page 2.

 2.. Defendant claims she was fourteen at the time of the photo. The year of her copyright notice on Plaintiff's Exhibit "A" is 2004

 3.. However a My Space Photo and bio dated 8/2/07, Plaintiff claims she was 19 years of age. Based on her actual date of birth that would mean she was either 16-17 when the photo was taken. This Bio was

also discovered approximately two days after Plaintiff first email claiming TVX stole her photo. (See Exhibit "D")

    4.. Lara Jade has not and cannot furnish proof she is the author of the photo she has named "NO EASY WAY OUT," or can she offer proof the Photo is actually her. The Photo is of such a nondescript nature that a million models could possibly be under that hat.

    5.. In fact Defendant has found the photo being sold by eighteen other's claiming the work. These photos were originally located during the month of February 2007. They were later downloaded and printed out in anticipation of Defendants deposition. They had also been downloaded earlier and turned over as part the interrogatories sent to Plaintiff's attorney.

a. The same photo is offered by Shweet-butterfly, blogspst.com/2007 dated 3/21/08. and found on Google. com No Lara Jade copyright notice appears on photos. (See Exhibits E-E1)

b. The same photo is offered by Stella 47 on Photobucket. com, Dated 2/19/08 No Lara Jade Copyright notice appears on photos ( See exhibit F-F1 photo)

c. The same photo is offered by Mel-oxo on Photobucket. com, dated 2/19/08. No Lara jade Copyright notice appears on photos. (see exhibit G-G1)

d. The same photo is offered by Lost Girl912 on Photobucket. com, dated 2/19/08. No Lara Jade Copyright notice appears on photos. (see exhibit H-H1)

e. The same photo is offered by Okleenex0 on Photobucket.com, dated 2/19/08. No Lara jade Copyright notice appears on photos. (see exhibit I-I1)

f. The same photo is offered by Funnybird83 on Photobucket.com dated 2/19/08. No Lara Jade Copyright notice appears on photos. (See Exhibit J-J1)

g. The same photo is offered by Rachel_Black on PhotoBucket.com dated 2/19/08. No Lara Jade Copyright notice appears on photos. (see exhibit K-K1)

h. Thee same photo is offered by FallenPinkRoses3 on Photobicket.com dated 2/19/08. No Lara Jade copyright notice appears on photos. (see exhibit L-L1)

i. The same Photo is offered by Miroku03609 on Photobucket.com dated 2/19/08. No Lara Jade copyright notice appears on photos. (see exhibit M-M1)

j. The same Photo is offered by Bre_Chicklets on Photobucket.com dated 2/19/08. No Lara Jade copyright notice appears on photos.( see exhibit N-N1)

k. The same Photo is offered by Fly_for-Fun on Photobucket dated 2/19/08. No Lara Jade copyright notice appears on photos. See exhibit O-O1)

l. The same photo is offered by Liv2lov on Photobucket.com. dated 2/19/08. No Lara Jade copyright notice appears on photos. See exhibit P-P1).

m. The same Photo dated 8/20/07 entitled "No_Easy_way_Out" is the most damming of all. Uploaded on May 13, 2007 by Sarajannachs's photo-stream and displayed on Flickr.com. **The photo is PUBLIC** is plainly printed on the page. Like the others the photos do not have a copyright notice on it with the name Lara Jade. (see exhibit Q-O1)

n. The same photo is offered by cavalli913 on Photobucket.com. dated 2/19/08. No Lara Jade copyright notice appears on photo (see exhibit "R")

o. The same photo is offered by Shawnee 350 on Photobucket.com Dated 2/19/08. No Lara Jade Copyright notice appears on photo. (see exhibit S)

p. The same photo is offered by Hiddenvampire on Photobucket.com exhidated 2/19/08. No Lara Jade copyright notice appears on photo.(see bit T.)

q. The same photo is offered by Leetuh282 on Photobucket.com. Dated 2/19/08. No Lara Jade copyright notice appears on photo. (see exhibit U)

r. The same photo is offered by Amy_902 on Photobucket.com dated 2/19/08. No Lara Jade Copyright notice appears on photo. (see exhibit V)

5

G. Based on the evidence above there is little doubt the copyright notice added to Plaintiffs exhibit "A" did not and had not appeared on the "NO Easy Way Out" photo prior to this lawsuit.


1. Plaintiff sent an email on January 29, 2007, 11:13 AM;

   Subject: Illegal Use if My Picture on One of Your DVDS.

   "I have recently found out that you are using a photograph of me on one your DVD covers. Body Magic. (I've attached the first file for an example)
   Here is my original picture your company has stolen from me.
   And I've also attached it in a second file.
   I am absolutely disgusted that you used my artwork for such a subject – I was fourteen at the time when the picture was taken and I had no clue until today you were using it in such a way. Your also selling my picture to advertise your film.
   I want you to remove all the DVD's out of the shop/online etc until you replace the cover, otherwise I will to press charges against you.
   My parents are disgusted with this too and will do all they can to help me with this case."

   a. The first file attached was from Plaintiff's Deviant Art website. The Photo in question, "NO EASY WAY OUT" was posted with the copyright Lara Coton 2004-07. The copyright was not posted on the body of the work but on a white section outline of the photo. After 39 years in the motion picture business, Defendant Burge found that to be odd but made no comment and politely answered that he would notify the artist who did the work for him and investigate the matter.

   b. We informed AJ Cohen of the claim and gave him Plaintiffs email address and demanded he contact her and take care of the problem. AJ Cohen was a freelance artist and not an employee of the company. He had done reliable work for Companies I had worked with for more then 25 years. He immediately claimed he had taken the photo from a Porn Public Domain Photo sharing sight.

   c. Defendant Burge then notified his attorney David Berke of the situation and he advised Defendant Burge to get in touch with Plaintiff's Parents since she was considered a minor and Defendant Burge should refrain from discussing the matter with Plaintiff, but with the Parents.

   d. An email was sent to Plaintiff requesting to discuss the matter with her parents. When asked by way of **Matters to be Admitted** question number 2, Plaintiff admitted we had emailed a request for her parents to contact us.

e. That afternoon Defendant Burge received a phone call from a female with an American accent. Lara Jade's bio said she was from England so Defendant Burge was immediately suspicious. The woman identified herself as Lara Craft and that she was in fact Lara Jade. She demanded 250,000 dollars for use of the photo. When Defendant Burge told her he could not negotiate with a minor and that he had no intention of paying her that sum she became emotionally upset. She then informed him it was apparent he was unaware of who she in actuality was.
When defendant Burge asked, who was she! She then informed Defendant Burge she was the model for the Lara Croft Doll. When he questioned her as to why they would use her for the Lara Croft Doll, when they Angelina Jolie, she cussed Defendant Burge, and called him a low life and hung up.

f. Defendant Burge immediately called AJ. Cohen and his Attorney David Berke and advised both of the phone call. David Berke again advised Defendant Burge to not discuss the matter with anyone but Lara Jade's parents and to change to DVD cover.

g. AJ Cohen had already talked to Plaintiff and felt she really didn't exist. Plaintiff Burge didn't buy his comment since he had an email and a phone call and both were proof that someone existed, as to who they were, Defendant Burge had no idea at that moment. When defendant Burge asked Mr. Cohen for a copy of the photo hard copy he had taken from the Porn website, he informed Defendant Burge that he didn't have ti because he had Lost his computers hard-drive that previous month. He was informed by Defendant Burge he had 30 days to find the Website.

h. Within an hour of Defendants Burge's discussion with AJ Cohen and David Berke, a second call came in from an American accented woman claiming to be Lara Fairie, who also claimed to be Lara Jade.
Again she requested 250,000 dollars. Despite his Attorney's warnings Defendant Burge found this to comical to resist so he asked her, "Why did she have a right to such much money."
She responded with, "You porno guys made millions using my picture, what she was asking was a trivial amount." When defendant Burge told her the release was a bomb and he earned less then 1500 dollars using the picture she called him a liar and said, " she had sources that could prove Defendant Burge was a liar. Defendant Burge then informed her he had to talk with her parents and that he could not negotiate with her. She quickly informed him she was nineteen. Defendant Burge then asked her when she was born. The so-called Lara Fairie made a fatal mistake. She claimed she was born in 1978., which would have made her twenty-nine. Defendant Burge then told her to go to hell and hung up on her.

i. Defendant Burge then called his attorney David Berke and brought him up to date on the matter. His advice was as before continue to change the image

7


on the film from the public and wait for the parents to call him. AJ Cohen was immediately notified to change the art on the cover and disk. He was also informed that he had thirty days to find the Porn website. The Movie was removed from the marketplace.

j. That afternoon Defendant Burge began an investigation into who Lara Jade was.

k. Network solutions revealed that Lara Jade. Com, entitled Lara Jade Photography was in fact registered to a US citizen named Greg Hill of Geneva Wisconsin. (see exhibits X-X1).

l. Upon typing in a request to Google search engine, "Girl With A Top Hat," Defendant Burge found 26 separate websites claiming to own the photo in question. None of the Photos carried the Lara Jade Coton copyright notice and only a couple carried the Lara Fairie watermark. (See exhibit E-U) Defendant Burge also discovered the Deviant Art Photo of "No Easy Way Out." The Copyright notice was missing as well as the watermark. (see exhibit C-C1)

Defendant Burge also discovered the "No Easy Way Out" photo on Flickr.com by way of google. The copyright notice was missing as well as the watermark. (see exhibit Q-Q1)

m. Defendant Burge had not heard from the Parents as was requested but the next morning Lara Jade Coton emailed TVX demanding money.

Defendant Burge at that moment because of the two untraceable phone calls from Lara Craft and Lara Fairie and the evidence he extracted from the internet relating to copyright and ownership of Plaintiffs website, had reason to believe a full blow scam was in play. To date Defendant Burge has not changed his opinion to that fact.
**Therefore his answer to Miss Jade.** There was no ridicule in-play. Defendant Burge was answering all three of the ladies that he had come in contact with concerning this matter. " Nice try toots," and "Lets face it your face means very little to the film," was in answer to Lara Craft and Lara Farire, who had both placed so much value on themselves and the Photo. Defendant Burge has no proof Lara Jade Coton was working in association with the other two ladies who called, but the mere fact they came so close to them time Defendant Burge requested Plaintiff's parents to get in touch with him made the who situation extremely suspect. Plaintiff's attorney is aware of all the facts previously submitted as we informed him of these problems via email.(see exhibit "B")

These comments were **never made in public** and were subject to a Private email. As for Lara Jade being a teenager in England, Defendant Burge had no reason to believe that person actually existed as an adult or teenager. She

had only showed who she was by way of the internet which in all cases is suspect at best. Had her parents called or gotten in touch with Defendant Burge at any time this matter would have never reached the legal level.

n. Plaintiffs assertion that TVX utilized Lara Jade's supposed Photo on their website www.tvxfilms.com, in connection with the sale, distribution and marketing of "Body Magic" prior to and for some period of time after January 29,2007 and TVX's website was available to be accessed by persons within and without the state of Florida is absurd.

o. On February 3, 2007 AJ Cohen by way of email informed Defendant Burge the Art had been changed. Within the week I received the art and by the end of the week the old Cover was removed from the TVX films website and the new cover was installed. Notices were sent to all buyer's to return any copies they had on their shelves for full Credit. (see exhibit Y)

p. On March 1, 2007 John Sanchez removed the password file from the website so that any distributor and website operator that needed could go on line and download the new Picture. Until that day in March 2007 unless you had an authorization password you could not enter the website. It was never available to the public and less then ten distributors new what that password was. None of those Distributors operated in Florida. Defendant Burge and TVX had never done business in Florida and Plaintiff cannot offer a single bit of evidence to support that claim.

q. Plaintiff has never been able to purchase a copy of the film from TVX or defendant Burge. All their minimal amount of purchases have come by way of third parties that TVX or defendant Burge did not do business with Directly. By June 22, 2007 only 133 net copies had been sold. All other copies had been destroyed. When TVX Inc ceased doing business in April 2008. Defendant Burge Removed Body Magic from website. Defendant Burge had removed it from the TVX HOME VIDEO catalog in early March of 2007.

r. Plaintiff cannot and has not to this point showed evidence to the court that TVX Home Video has ever operated an interactive Website or provide evidence that Defendant Burge or TVX Home Video has ever done business in the State of Florida. TVX Home Video doesnt not does business as TVX films as Plaintiffs attorney claims. TVX films was a website owned and operated by TVX Inc.

r. For Plaintiff to claim that Defendant Burge continues to violate, infringe so called copyright and that Defendant Burge is willfully and intentionally doing so is without merit and Plaintiff cannot show one shred of evidence to back up the accusation.

9

**11. Statutory Misappropriation of Image and All Remaining Claims**

All plaintiff has done is rehash in plaintiffs pleadings is what the court already knows. No additional evidence has been produced that supports any of their claims. In fact all the evidence Defendant Burge has presented in this document totally refutes their claims.

1. Defendant Burge has never used the name or likeness of Lara Jade Coton. The nondescript photo in question hardly applies. The name on the cover is Sylvia Kristal. and has always been Sylvia Kristal. The edge photo on the cover is clearly Sylvia Kristal and has always been Sylvia Kristal. That alone proves there has ever been an attempt to use Lara Jades likeness or name.

2. However paragraph 39; reveals that Plaintiff's attorney knew as early as June 2, .2007 that the cover on the DVD had been changed because Plaintiff claims her counsel placed an order for the "Body Magic" through the interactive website www.strippers.inadult.com and ordered a copy of "Body Magic" on May 29, 2007 and that that DVD with the changed cover was delivered to Plaintiffs counsel at an address in Hillsborough County.

3. Paragraph 40; Plaintiff is admitting that her Counsel purchased a copy of "Body Magic" through an interactive website www.excaliburfilms.com on or about June 9, 20007 and that the so called picture of Lara Jade was not on the DVD cover.

4. Paragraph 41" Plaintiff is admitting that her Counsel purchased a copy of "Body Magic" through an interactive internet website owned and operated by Grain Belt News on or about June 16, 2007 and that the so called picture of Lara Jade was not on the DVD cover

5. In these admissions Plaintiff is admitting that Plaintiff was well aware that the cover had been changed and that TVX INC. and Defendant Burge did not do business in Florida.

6. Plaintiff is also admitting that Plaintiff was forced to go to a website other then TVX to buy the DVD, TVX ceased selling the DVD on June 22, 2007.) at that time it wasn't using the cover with Plaintiff so called image and Plaintiff **could not purchase the film through www.tvxfilms.com because it was not an interactive website and did not deal with the public.**

7. Plaintiff is also admitting that even though three websites does business in Florida. TVX INC and Defendant Burge was not and has never done business in Florida.

8. Plaintiff is admitting that neither of the websites had purchased the copies directly from TVX INC or defendant Burge it meant that the three website had to purchase them through a second party at best. TVX INC was not selling to anyone of these companies at the time and had never ever done business with <u>Grain belt News</u> or <u>www.strippersinadult.com.</u>

9. In a letter dated August 21, 2007 between Tim C. Riley counsel for V.C.X. ltd. and Plaintiff's counsel. In paragraph 3, VCX admits that it had 12 unsold pieces in stock which were being held for refund or destruction. The reason they were being held was that upon learning that four of the disks had not been blacked out or changed, Defendant Burge called NINA HANGACH of VCX and had her inspect the disks. She had purchased five units on 3/12/007 by way of purchase order # 9179. On 6/18/2007 she purchased ten units by way of purchase order #9299. On 8/6/09 TVX had already issued VCX a credit memo for 11 copies 15 days before the letter between counsels.

10. In Paragraph 4 of the letter Riley states;

> THE COPIES OF BODY MAGIC THAT VCX PURCHASED FROM TVX CAME IN A SEALED DVD CARTONS EACH BEARING A TVX COPYRIGHT NOTICE. WE HAVE EXAMINED THE PICTURE OF LARA JADE COTON ATTACHED TO THE COMPLAINT THAT YOU FORWARDED ME. NONE OF THE DVD CARTONS THAT VCX ACQUIRED OR SOLD HAD THE PICTURE OF Ms. COTON ON EITHER THE FRONT COVER OR BACK COVERS. THE DVD CARTONS THAT VCX ACQUIRED FROM TVX HAD AN OLD POTOGRAPH ON THE COVER THAT APPEARS TO BE SYLVIA KRISTEL, THE STAR OF THIS 1982 FILM. THE BACK COVER CONTAINS STILLS FROM THE FILM.

11. In paragraph 5 of the letter Riley States;

> EVEN IF ANY PURCHASER COULD HAVE SEEN THE PICTURE OF Ms. COTON PRIOR TO PURCHASE (AND THEY SURELY COULD NOT), IT IS WHOLLY UNREASONABLE TO PRESUME THAT THE PRESENCE OF THAT PICTURE WAS IN ANY WAY THE SALES IMPETUS. WHILE IT IS A VERY NICE PICTURE, IT IS NOT IN ANY WAY PROVOCATIVE. LIKEWISE, Ms, COTON IS NOT RECOGNIZABLE TO THE GENERAL PUBLIC AND CERTAINLY NOT TO THE ADULT FILM MARKET. WHY TVX PUT THE

PICTURE ON THE FACE OF THE DVD DISC IS A MYSTERY TO VCX.

12. That letter stopped Plaintiff's counsel from adding VCX to the complaint. What the letter also reveals is that VCX had (12) twelve copies of "Body Magic," on hand on August 21,2007. What VCX is admitting that it was buying copies of "Body Magic" from either another source or duping the films themselves. VCX had only purchased 15 units through PO's # 9179, 9299. They admitted they sold 4 copies to Excalibur films.com and 3 units to Premier Sales Group. That meant they could only have eight copies on hand on august 21,2007.

. The question is where did they get the other four copies. Plaintiff's counsel knew that VCX was being sued by TVX for infringement for using a company called Collectors Classix using the TVX copyright notice on their DVD cartons to sell TVX product. That lawsuit was later resolved in favor of TVX. (See Page 16 of Plaintiff's Supplementary motion, Paragraph 68.)

13. The letter confirms that TVX had already changed the DVD cover as early as 3/12/07. VCX'S PO, 9179 is dated 3/12/07. That means Plaintiff and her counsel were aware that the changes had been made as early 8/21/07 and continued with this action. They already was aware that TVX was no longer selling the DVD'S long before Plaintiff filed their action. They also knew the disks had been blacked out.

   a. Plaintiff knew that VCX was a possible duper. They had in their file copies of both PO's and the letter from Riley.

   b. Plaintiff counsel was aware TVX had only sold 15 units to VCX.

   c. Plaintiff's counsel knew that VCX had sold seven copies.

   d. Plaintiff's counsel knew that on VCX admitted to still have 12 copies on their shelves on 8/21/07. That left four they had to buy from someone else or make themselves.

   e. On September 2, 2008, Plaintiff answered admissions question 7 as follows

      ADMITTED THAT TVX AT SOME POINT REMOVED "NO EASY WAY OUT" FROM ITS WEBSITE. PLAINTIFF IS WITHOUT KNOWLEDGE AS TO WHEN TVX DID SO AND HAS NO RECORDS FROM WHICH TO ASCERTAIN WHEN THAT OCCURRED.

4. If Council did not believe they knew on June 2, 2007, Plaintiff's Counsel did know on 8/21/07 that TVX had changed the DVD cover as early as 3/12/07. He had the letter from VCX'S counsel and both PO# 9179, 9299. It is fair to assume if TVX and Defendant Burge had changed the DVD cover, they had also changed the photo on the website. Therefore they filed a false admission

H. Plaintiff Lara Jade Coton is not a minority, she is an individual. She is not a minority in the state of Florida nor is she an individual in the State of Florida. She is a citizen of the United Kingdom. She has no standing in any community in Florida, whether respectable or not. Therefore her claims under Jesus for Jews V. Rapp does not apply.

***Jews for Jesus v. Rapp*** Bruce Rap reporting an event concerning his father in the a Newsletter Jews for Jesus. The complaint Rapp 944 so.2d at 462. The complaint alleged that the newsletter was published on the internet and seen by the relatives.

1. The letter in Rapp is a distinct defined presentation that left nothing to anyone's imagination as to what was being said.

2. The Photo, "No Easy Way Out" is a nondescript photo that no one could possibly ascertan by looking at it who the person is underneath the black top hat

3. Defendant Burge's comment's to Plaintiff was in a private email that Plaintiff Lara Jade Coton herself posted on her deviant art website on May 25, 2007. In that posting, Plaintiff made several false statements. (see exhibit Z- Z1-Z2

a. Plaintiff claimed her Photo attained Hustlers highest rating. The rating on the cover had to do with the contents of the movie not her picture. The rating had been given to the film before Plaintiff was born.

b. Plaintiff claimed Hustler.com was stocking it in a range of other dirty video websites. Records show Hustler never placed the film on their website. The proof of that is Plaintiff did not include them in the Lawsuit.

c. Plaintiff claimed she contacted Hustler and they gave her the name of the company, TVX FILMS. TVX. Defendant Burge has never done business at Hustler. Defendant Burge has never had any contact with anyone at Hustler nor has he ever had contact with Hustler.

d. Plaintiff claimed, "I sent a long friendly letter to TVX films. The letter she sent was anything but long and friendly. The email was short and nasty. She accused Defendant of stealing her Photo. (See exhibit B)

13

1. Plaintiff claimed, "I even have one of the first prints at my local Walmart store with the date on! AND my small watermark on the dress which had been removed from the cover." Plaintiff has previously admitted in her interrogatories she has no physical evidence that can confirm she is the owner of the photo.

2. Plaintiff claimed I had a bloody copyright symbol and my name across my dress. Again She cannot produce any physical evidence to substantiate that comment.

3. What Plaintiff left out of this posting was the fact Defendant Burge had requested that her parents contact us. She realized if she did her fans would have simply asked, if your parents were so mad why didn't they contact Defendant Burge

## CONCLUSION

Plaintiff new when she posted the letter and her comments was a deliberate attempt to gain sympathy and notoriety and to defame TVX and defendant Burge. Why else would she post the picture of a kidnapped child under the name of TVX FILMS unless that was the case. This photo of Madeline was never posted on any of her other websites. Just on this notice on Deviant Art. Com. She called defendant Burge a sleaze. The only person guilty of defamation in this case is Plaintiff.

Plaintiff, has not presented one shred of evidence to the court to support their claims . Defendant's documents support the fact that in fact Plaintiff had abandoned her copyright and that by her own actions she had unclean hands. She was a minor when she contacted TVX. When TVX requested to discuss the matter with her parents she made no effort to have them do so. Leaving Defendants Burge hands tied. Defendant Burge did as he said he would do, he changed the cover on the DVD cartons and removed the picture on the website. By June 22, 2007 the company had ceased selling the film entirely and had destroyed more then 850 copies.

Plaintiff, has not presented one shred of evidence that TVX Inc or Defendant Bob Burge has ever done business in Florida subject to stat.48.193 that would allow the court to pierce the corporate veil of Televised Visual X-Ography, Inc. Defendant Burge although President of the company was a minority stockholder and at all times operated and proceeded on advice of attorney and in a manner that protected the corporation as it's employee.

The court should ask why did Plaintiff's parents not contact Defendant Burge. In Plaintiff's email to TVX she said and I quote, "My Parents are disgusted with this too and will do all they can to help me with this case."
Not only did the parents never contact defendant Burge, but they must not have cooperated with Plaintiff's counsel because Plaintiff did not file her action until the day after she reached her eighteenth birthday.

Why did Plaintiff not bring a wealthy company like VCX into the legal proceeding when it brought in firms that never did business with TVX nor did they sell the product.

In this document why did Plaintiff say she got her information from Hustler about TVX. The reason is she could not get the information she needed to contact Defendant Burge from his website. At that time it was locked out to the public. The website contained all The information on TVX website, telephone numbers, addresses, email addresses and Defendants Burge 's name were all posted on the website. The website was not available to the public without a password and the password was only given to the distributors. By 3/1/07 the art had been changed and the photo in question was not be found on the website. For her to obtain that password she would have to know a major porn distributor who had it. None of those that she has filed suit against had that password except IVD. Even Excalibur and VCX did not have it. Plaintiff claims to be unassociated with porn but again; Plaintiff had to have a major Porn connection to gain access to the website in order to get hold of Defendants Burge name and private email address.

There is nothing that has been submitted to this court that cannot be answered by plaintiff in writing. Justice deserves the truth. I'm aware my filings are crude compared to Plaintiffs' attorney. But it's the best I can do. I appreciate the courts indulgence however the court may determine this request.

Robert A. Burge
1707 Post Oak Rd #252
Houston, Texas 77056
713-466-0100

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th of April, 2010, I mailed overnight via Fedex this filing with the clerk of the court. I further certify I mailed the forgoing to the following;

Richard Harrison, Esquire
Allen Dell PA
202 South Rome Ave. Ste 100
Tampa, Florida 33606