UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARA JADE COTON,

       Plaintiff,

v.                                  CASE NO.: 8:07-CV-01332-T-23TGW

TELEVISED VISUAL X-OGRAPHY, etc.,
et al.,

       Defendants.
_____/

**PLAINTIFF'S POST-TRIAL MEMORANDUM OF LAW
REGARDING DAMAGES CALCULATIONS**

Plaintiff, LARA JADE COTON ("Lara Jade"), by and through her undersigned counsel and pursuant to this Court's Order (Doc. 116), hereby submits this memorandum of law regarding the calculation of damages as to the Defendants, TELEVISED VISUAL X-OGRAPHY, INC. ("TVX") and ROBERT AUGUSTUS BURGE a/k/a BOB BURGE a/k/a BOB AUGUSTUS, ("Burge").

**I.**      **Summary of Damages Sought – Second Amended Complaint**

Lara Jade seeks damages in the following amounts, as more fully explained herein:

| COUNT | CLAIM | DAMAGES |
|---|---|---|
| I | Direct Copyright Infringement | $3,077 Actual Damages* $1,172 Infringer's Profits |
| II | Contributory Infringement | $3,077 Actual Damages* $1,172 Infringer's Profits |
| III | DISMISSED | -- |
| IV | Statutory Misappropriation of Image | $770 License Fee $25,000 Compensatory $25,000 Punitive |
| V | Common Law Misappropriation of Image | $25,000 Compensatory |
| VI | DISMISSED | -- |
| VII | Defamation by Implication | $100,000 Compensatory $25,000 Punitive |
| VIII | Conspiracy to Commit Defamation by Implication | $100,000 Compensatory $25,000 Punitive |
| IX | Intentional Infliction of Emotional Distress | $100,000 Compensatory |
| X | DISMISSED | -- |
| XI | DISMISSED | -- |

* See discussion in text.

**II.  Counts I and II – Damages for Copyright Infringement**

Section 504 of the Copyright Act sets forth the measure of damages available to Lara Jade in this action. It provides, in relevant part, as follows:

> § 504. Remedies for infringement: Damages and profits
>
> (a) In general. Except as otherwise provided by this title, an infringer of copyright is liable for either - -
>   (1) The copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
>   (2) Statutory damages, as provided by subsection (c).
>
> (b) Actual damages and profits. The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross

2

> revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. §504. As the express language of §504 makes clear, a plaintiff may recover both actual damages <u>and</u> the profits of the infringer. *See Kleier Advertising Co. v. James Miller Chevrolet, Inc.*, 722 F. Supp. 1544 (N.D. Ill. 1989); *Nimmer on Copyright* §1401 (Matthew Bender 2007).[1]

    A.    <u>Lara Jade's Actual Damages</u>

Actual damages can often be measured by the revenue the plaintiff lost as a result of the infringement, including any lost sales, lost opportunities to license, or diminution in the value of the copyright, *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008). The damages may also be determined by the calculation of a retroactive license fee. As explained in *Thornton*:

> As Defendants acknowledge, however, a claim for lost profits may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant. *See e.g., Montgomery*, 168 F. 3d at 1295-96 (affirming jury award of actual damages based on a retroactive license fee); *On Davis*, 246 F. 3d at 166. In order to demonstrate entitlement to a reasonable license fee, Plaintiff "must show that the thing taken had a fair market value." *On Davis* 246 F. 3d at 166. Courts have found adequate evidence supporting a finding of fair market

---

[1] Because Lara Jade did not register her copyright in "No Easy Way Out," she is not entitled to recover the statutory damages provided for in 17 U.S.C. §504(c) or attorneys fees. 17 U.S.C. §412 (Registration as prerequisite to certain remedies for infringement). The failure to register does not bar her copyright claim under §411, however, as that limitation on the right to maintain a copyright action is expressly limited to copyrights in "any United States work." 17 U.S.C. §411(a). Lara Jade's work that is the subject of this action, and any copyright therein, arose outside the United States. The claimant of a copyright in any other work may maintain a suit without first registering the copyright. *Nimmer on Copyright* §7.16(B)(1)(a)(ii) (Matthew Bender 2007).

>   value when: (1) the plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work. **\*1277** *See e.g., On Davis*, 246 F. 3d at 166 (plaintiff testified he had previously been given a $50 royalty for the use of a photograph which included his sunglasses); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359 (S.D.N.Y.2003) (plaintiff produced evidence of previous license fees of $15 to $88 paid for the publication of his photographs); C*ountry Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331-32 (S.D.N.Y.2003) (noting that license fees paid to other artists could be used to measure the plaintiff's license fee.)

*Thornton*, 580 F. Supp. 2d at 1276-1277.

Lara Jade presented evidence that she had previously received compensation for the use of "No Easy Way Out" via the sales of the same image on her Deviant Art website. [Plaintiff's Trial Ex. 10] She also furnished evidence of benchmark licenses – what others have paid in license fees for her similar works. Specifically, she testified that she had recently licensed one of her works to publisher Harper Collins for use as a book cover for a licensing fee of 2,000 British Pounds ("GBP"). [Plaintiff's Trial Ex. 8] The monetary conversion rate for calendar year 2010, through the date of trial, varied from approximately .61 to .70 U.S. Dollars ("USD") to the GBP. [Doc. 114] Utilizing a conversion rate of .65 USD to the GBP, the equivalent of 2000 GBP would be $3,077.

However, Lara Jade also testified unequivocally that she would not have licensed her work for use in connection with the Defendants' (or anybody else's) pornographic movie. Although a lost license fee calculation is in many senses hypothetical, it is fundamentally a determination of what a willing buyer would have paid a willing licensor for the right to use the work in question. Here, Lara Jade would not have licensed her

work to TVX and Burge. Accordingly, although her work clearly and demonstrably has value, the lost license fee measure of damages may not be applicable. *See 6 Patry on Copyright* §22.111 ("Conversely, a plaintiff must establish as threshold matter that the use in question is of a type if had in the past licensed or would have licensed: mere use of a work without permission does not automatically equate to lost license fees, as, for example, where plaintiff had previously refused a license request or had expressed no interest in licensing the use at issue.").

      B.      The Defendants' Profits From the Infringement

The purpose of an award of the infringer's profits is to prevent the infringer from unfairly benefitting from his own wrongful conduct. Section 504(b) requires Lara Jade only to put on evidence of the Defendants' gross profits from the use of the infringing work. Lara Jade presented evidence of the gross profits from the sale of "Body Magic" in the following amounts: $490.00 [Plaintiff's Trial Exs. 35 and 36]; $88.00 [Plaintiff's Trial Ex. 37]; and $70.00 [Plaintiff's Trial Ex. 38], for gross profits of $648.00 on 148 units sold. TVX's inventory reflects, however, that it sold at least 234 units of "Body Magic." [Plaintiff's Trial Ex. 39] Valuing the additional 86 sold units at a sales price of $8.00/unit, consistent with TVX's highest actual sales price [Plaintiff's Trial Ex. 37], produces additional gross profits of $688.00. Thus, Lara Jade presented evidence of total gross profits of $1,336.00 from the sale of "Body Magic."

Although it is the infringer's burden under §504 to prove its deductible expenses as an offset against gross profits, the record does reflect certain such expenses. In candor to the Court, Lara Jade will credit the expenses, to the extent they are evidenced

in the record. However, the credit is only for expenses attributable to the 234 units sold, not the expenses attributable to the units that Burge claims to have destroyed after his infringement came to light. *See Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc.*, 86 F. Supp. 399, 411-412 (S.D.N.Y.1949)(manifestly unjust to allow infringer to deduct total cost of infringing prints, including those unsold or seized, from the sales price realized from the infringing items actually sold on the market).

Here, the evidence reflects manufacturing costs totaling $701.00 that are attributable to the 1,000 units of "Body Magic" original manufactured for and held in inventory by the Defendants. [Plaintiff's Trial Ex. 39] That equates to a deductible cost of .70/unit, or a deduction of $164.03 for the 234 units sold. Lara Jade is entitled to the gross profits of $1,336.00 reduced by costs of $164.03, for damages in the amount of $1,171.97.

### III. Counts IV and V – Damages for Misappropriation of Plaintiff's Likeness for Commercial Purposes

A. <u>Statutory Misappropriation of Likeness</u>

Florida Statutes §540.08 provides that no person shall "publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person" without that person's express written or oral consent. The statute protects the so-called "right of publicity." *See, Tyne v. Time Warner Entertainment Company, L.P.*, 901 So.2d 802, 809-810 (Fla. 2005) (discussing right of publicity).

An important aspect of the right of publicity is "being able to control the place as well as time and number of one's public appearances." *Douglass v. Hustler Magazine,*

*Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985). To that end, Fla. Stat. §540.08 prohibits the use of a person's likeness or photograph for marketing or advertising of a movie in which the person has not participated and with which she has no involvement. *See Tyne*, 901 So.2d at 806-808 (discussing Section 47 of the Restatement (Third) of Unfair Competition); *compare, Lane v. MRA Holdings, Inc.*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002) (no violation of Fla. Stat. §540.08 by use of woman's image to market "Girls Gone Wild" video in which she appeared); *Loft v. Fuller*, 408 So.2d 619 (Fla. 4 DCA 1981) (no violation of Fla. Stat. §540.08 by use of decedent's name and portrayal of decedent as a ghost in fictional book and movie).

Here, the undisputed evidence shows that the Defendants utilized Lara Jade's photograph and self-portrait as the cover art and face art of the pornographic film, "Body Magic," in which Lara Jade is not a participant and with which she had no involvement whatsoever. [Plaintiff's Trial Exs. 9, 12 and 14 (cover art) and 34 (DVD face art)]. Further, Lara Jade's photograph was utilized to advertise and market "Body Magic" on numerous other websites in connection with the sales of the movie. [Plaintiff's Trial Exs. 28, 29, 30]. The Defendants supplied the images of the "Body Magic" cover to their customers for use in marketing the movie online. [Plaintiff's Trial Ex. 46, Burge deposition, pp. 156-157]

The Plaintiff also testified that she did not authorize the use of her photograph and portrait in connection with the "Body Magic" movie or its related advertising. Thus, liability under Fla. Stat. §540.08 is clear.

The statute expressly provides that a plaintiff may recover "damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages." Fla. Stat. §540.08(2). Lara Jade is entitled here to both actual damages and punitive damages for the unlawful misappropriation of her photograph and likeness.

In terms of the actual damages available, the following is a brief summary:

> In all cases of invasions of privacy, but especially an invasion of a right of publicity where the plaintiff has damage to his commercial viability, the plaintiff is entitled to recover the commercial value of what was damaged. The rationale behind this type of damages is twofold and stems from the ideas believed unjust enrichment. First, the defendant received something that would have been the plaintiff's if not for the defendant's infringement. Second, the defendant profited from the use of the plaintiff's property without permission.
>
> Damages would include not only the fair market value of what was appropriated without permission but also any future damages to plaintiff's career.
>
> * * *
>
> In cases where defendants damage a plaintiff's professional standing and publicity value, the wrongful use of identity will allow for compensation for damages beyond the money earned by the defendant. These damages for commercial loss would attempt to repair the damage to the plaintiff's professional standing and future marketability.

Coleman, J., Note: Digital Photography and the Internet, Rethinking Privacy Law, 13 J. Intell. Prop. L 205, 217 (2005).

Lara Jade testified that she had twice in 2009 licensed other self-portraits for use as book covers and had in each instance received compensation in the amount of 500

GBP. The monetary conversion rate during 2009 was between approximately .6 to .7 U.S. Dollars ("USD") to the British Pound. [Doc. 114] Utilizing a conversion rate of .65 USD to the GBP, the equivalent of 500 GBP would be approximately $770.00.

In addition, Lara Jade testified that the Defendant's misappropriation of her image and its use in connection with the "Body Magic" pornographic movie has damaged other aspects of her professional career. Specifically, she testified that Canon, one of the world's largest manufacturers of cameras and photographic equipment, had agreed to sponsor Lara Jade and to utilize her in its marketing campaign. Because of the "Body Magic" situation, however, Canon has thus far declined to use Lara Jade as a spokesperson or model in its advertising. Lara Jade testified that the sum of $25,000.00 would be reasonable compensation for the misappropriation of her image by the Defendants.

The Court should also award punitive damages, as expressly authorized by Fla. Stat. §540.08. Lara Jade submits that punitive damages in the sum of $25,000.00 would suffice to deter these and other Defendants from such conduct. That amount is significant enough to provide a deterrent effect and to punish the Defendants' wrongful conduct, but not so great as to bankrupt the Defendants. Plaintiff's Trial Exs. 44 and 45, which are the Defendant TVX's corporate tax returns for tax years 2006 and 2007, respectively, reflect gross sales in the amount of $115,362 for 2006 and $78,622 for 2007.

B.   Common Law Misappropriation

Florida law recognizes the misappropriation of one's name or likeness to obtain some benefit as one of the four categories of common law invasion of privacy. *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 162 (Fla. 2003); *Agency on Health Care Administration v. Associated Industries of Florida, Inc.*, 678 So.2d 1239, 1252 n. 20 (Fla. 1996).

The statutory remedy provided in Fla. Stat. §540.08 is in addition to, but does not limit or displace, the common law tort. As stated in Fla. Stat. §540.08(7), "The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasions of her or his privacy."

Lara Jade testified that the sum of $25,000.00 would be reasonable compensation for the misappropriation of her likeness by the Defendants. Her testimony is unrebutted and the Court should award damages in the sum of $25,000.00 on Count V.

IV.   **Counts VII and VIII – Damages for Defamation by Implication**

Florida recognizes the cause of action of defamation by implication "as a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). As explained by the Florida Supreme Court, "if the defendant juxtaposes a series of facts so as to supply a defamatory connection between them, or creates a defamatory implication by omitting

facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Rapp*, 997 So.2d at 1108.

The Florida Supreme Court in *Rapp* also adopted and clarified the relevant "community standard" in such cases by expressly adopting the standard set forth in Comment (e) to Section 559 of the Restatement (Second) of Torts. Thus, a defamatory statement is one that tends to injure one's business or reputation or occupation" as objectively interpreted by a "substantial and respectable" minority of the community. *Rapp*, 997 So.2d at 1114-1115. The statement need not be construed as defamatory by the community at large. *Id.* at 1115. The Florida Supreme Court relied in part on *Peck v. Tribune Co.*, 214 U.S. 185, 29 S. Ct. 554 (1909), a case in which the plaintiff brought a libel action against a publisher for the unauthorized use of her picture in advertising.

In this case, there is no doubt that the Defendant's juxtaposition of Lara Jade's image in "No Easy Way Out," her self-portrait, with the pornographic movie "Body Magic" implies a connection between Lara Jade and the pornographic material in the movie. Indeed, it appears that the photo of Lara Jade was selected by the Defendants precisely due to its similarity to the original cover art for the movie (which depicted a woman wearing nothing but a top hat). There is just as clearly no doubt that such a juxtaposition and the resulting implications are defamatory.

Tort claims have been sustained in numerous similar cases. *See, e.g., Douglas v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir. 1985) (upholding false light claim where Hustler published photos of plaintiff, even though plaintiff had previously modeled for Playboy magazine); *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084 (5th Cir. 1984)

(upholding false light claim where Hustler published stolen nude photograph of woman).[2] *See also Arnold v. Treadwell*, 2009 WL 2136909 (Mich. App. 2009)(Acknowledging viable claim against website that published plaintiff's photos in suggestive magazine and website, but affirming dismissal where plaintiff failed to prove offensive nature of website) *Benz v. Washington Newspaper Pub. Co., Inc.*, 2006 WL 2844896 (D.D.C. 2006) (upholding claim where newspaper published article linking plaintiff to a sexual relationship with a "porn king").

In an action based on defamation, the plaintiff is entitled to recover damages for "Any injury to reputation or health and any shame, humiliation, mental anguish, and hurt feelings experienced on their part [or to be experienced in the future]. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in the light of the evidence." Florida Standard Jury Instructions (Civil), Instruction MI4.4 (Defamation: Causation and Damages).

Lara Jade testified that the amount of $100,000.00 would be fair compensation for the humiliation she suffered as the result of having her photograph used in connection with the "Body Magic" pornographic movie and related marketing materials. That testimony is reasonable and uncontroverted. In *Wood v. Hustler Magazine, Inc.*, 736 F2d 1084 (5th Cir. 1984), for example, the court upheld an award of $150,000.00.

---

[2] In *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098 (Fla. 2008) the Florida Supreme Court recognized the substantial overlap between the tort of false light invasion of privacy and defamation by implication.

The Court should award Lara Jade $100,000.00 on her claim of defamation by implication.

Florida law also permits an award of punitive damages in such cases. Florida Standard Jury Instructions (Civil), Instruction MI4.4 (Defamation: Causation and Damages). The Court should award Lara Jade an additional $25,000.00 for punitive damages.

V.  **Count IX – Damages for Intentional Infliction of Emotional Distress**

Florida recognizes the tort of intentional infliction of emotional distress as defined in Section 46 of the Restatement (Second) of Torts. *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla. 1985). The elements of the tort are (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Liberty Mutual Ins. Co. v. Steadman*, 968 So.2d 592, 594 (Fla. 2 DCA 2007). The conduct must be so outrageous in character and so extreme in degree that it is deemed atrocious and utterly intolerable in a civilized community. *Thomas v. Hospital Board of Directors of Lee County*, ___ So.3d ___, 2010 WL 1816251 (Fla. 2 DCA May 7, 2010).

Whether the conduct in question is sufficiently intolerable and outrageous to support the claim is a question of law for the Court. *Barton v. Tampa Electric Co.*, 1997 WL 128158 (M.D. Fla. 1997); *DeShiro v. Branch*, 1996 WL 663974 (M.D. Fla. 1996). The standard is admittedly a high one, and there is a little by way of clearly analogous case law to guide the Court here. *See DeShiro*, 1996 WL 663974 at *4 ("Without a definitive example of what constitutes outrageous conduct, this Court is bound by

Florida precedent, district court decisions, and Eleventh Circuit Court of Appeals decisions.")

In this case, the Court should also consider Lara Jade's youth and vulnerability in evaluating the Defendants' conduct. Comment f to Section 46 of the Restatement (Second) of Torts has been expressly adopted and relied upon by Florida courts in assessing such claims. *See, e.g., Thomas*, ___ So.3d ___, 2010 WL 1816251 at *8; *Liberty Mutual*, 968 So.2d at 595. The Comment elaborates that:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is particularly susceptible to emotional distress, by reason of severe physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

*Id.*

In this case, the Defendants took what they had to know was a reasonably recent photograph (it was uploaded digitally to a photo sharing site) of an obviously young woman and used it as the cover art, face art and online marketing material for their pornographic movie. In her very first communication with Burge and TVX, Lara Jade stated clearly that she was only fourteen years old when the photograph was taken. [Plaintiff's Trial Ex. 17] She refers in the same email to her parents assisting her, suggesting that she is still not of legal age. [Plaintiff's Trial Ex. 17] She also provided Burge and TVX with a link to her Devant Art website, which contains biographical information, including her age.

Aside from the sheer outrageousness of utilizing a photograph of a young woman for the cover of a pornographic movie without any express consent, or a model release, or any apparent attempt to even determine who or how old the woman is, the Defendants' conduct after the matter was brought to their attention makes the matter all the more outrageous. Knowing that they were now dealing with a photograph of a minor and with a girl who was very likely still not of legal age, Burge and TVX proceeded to berate, belittle and insult Lara Jade – – even having the audacity to suggest that she was trying to "scam" them [Plaintiff's Trial Ex. 20] and blaming her for the poor sales of the "Body Magic" movie. [Plaintiff's Trial Exs. 18, 20, 22]

Lara Jade testified to the severe emotional distress that she suffered as the result of the Defendants' conduct that included her severe (and understandable) humiliation at being associated with the pornographic movie, as well as the effect on her sleep and eating habits. She also testified that this emotional distress actually caused her to leave photography for a time – a compelling statement of the severity of the emotional distress given her obvious talent in this field and her dedication to her art.

In *Barton v. Tampa Electric Co.*, 1997 WL 128158 (M.D. Fla. 1997) the Middle District held that an employer's conduct in limiting an employee to two restroom breaks per day alleged sufficiently outrageous conduct to defeat the employer's motion for summary judgment on the claim of intentional infliction of emotional distress. Lara Jade submits that the conduct of these Defendants was, by any standard, far more outrageous than the employer's conduct in *Barton*.

The damages recoverable for international inflection of emotional distress include compensation for the mental anguish suffered by the Plaintiff. In that regard, "There is no exact standard for fixing the compensation to be awarded . . . . Any award should be fair and just in light of the evidence." Florida Standard Jury Instructions (Civil), Instruction MI10 (Outrageous Conduct Causing Severe Emotional Distress). Lara Jade testified that the sum of $100,000.00 would be fair compensation for the severe emotional distress in this case. The Court should award damages in that amount.

## **CONCLUSION**

For the foregoing reasons, the Court should award damages to the Plaintiff, Lara Jade Coton, in the amounts set forth herein.

*s/ Richard A. Harrison*
**RICHARD A. HARRISON, ESQUIRE**
Florida Bar Number: 602493
Allen Dell, P.A.
202 South Rome Ave., Ste. 100
Tampa, Florida  33606
Telephone: (813) 223-5351
Facsimile:  (813) 229-6682
E-mail:  rharrison@allendell.com
Counsel for Plaintiff, LARA JADE COTON
Lead Trial Counsel

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th of August, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document by first-class mail to the following non-CM/ECF participants:

Robert Augustus Burge
c/o TVX Home Video, Inc.
1707 Post Oak Road, Suite 252
Houston, TX 77056

                                      *s/ Richard A. Harrison*
                                      Florida Bar Number: 602493