UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARA JADE COTON,

      Plaintiff,

v.                                          CASE No. 8:07-CV-1332-T-TGW

TELEVISED VISUAL X-OGRAPHY, INC.,
and ROBERT AUGUSTUS BURGE,

      Defendants.

_____

O R D E R

      The plaintiff seeks damages for copyright infringement, misappropriation of her image, defamation, and intentional infliction of emotional distress arising from the defendants' unauthorized use of her photograph on the packaging of their pornographic movie DVD "Body Magic" (Doc. 121). The defendants failed to defend this case, and a default was entered against them. The well-pled complaint allegations establish her claims of direct copyright infringement, statutory misappropriation of image, and defamation by implication.

After the plaintiff filed a Motion for Default Final Judgment of Liability against Televised Visual X-Ography, Inc., and Robert Augustus Burge (Doc. 99), a non-jury trial was held to determine the amount of damages to which the plaintiff was entitled. Based upon the evidence adduced at the hearing, judgment will be entered for the plaintiff in the amount of $129,173.20.

I.

On July 21, 2010, a non-jury trial on the plaintiff's damages was conducted. The plaintiff and her counsel appeared. The plaintiff offered exhibits into evidence, and she testified on her own behalf. No one appeared on behalf of the defendants. A summary of the relevant testimony and other evidence presented at trial follows.

Plaintiff Lara Jade Coton, who was 20 years old at the time of trial, is a professional photographer who was born and raised in England. She also currently resides there. Coton started her own company, Lara Jade Photography, in 2007, at age 17 (see Pl. Ex. 1). Her photography has been featured in magazines, and she has been commissioned to photograph, among

-2-

other things, products for retail sale (see Pl. Exs. 2-7).  Further, clients have paid the plaintiff licensing fees for the use of her self-portraits.

The photograph at issue in this case is a self-portrait of the plaintiff wearing a formal dress and top-hat while she posed in front of a window (see Pl. Ex. 9). The plaintiff photographed this image of herself, one of her first self-portraits, at age 14, while vacationing with her family in England.  The plaintiff described the picture as a girl playing dress-up.

The plaintiff placed the photograph, which she titled "No Easy Way Out," on a website named deviantART, which is an on-line artistic community where photographers receive feedback about, and sell, their photographs (see Pl. Ex. 16). Through the deviantART website, millions of people have viewed the plaintiff's work, and she has profited thousands of dollars from selling copies of "No Easy Way Out" and other photographs (see Pl. Exs. 10, 11).

In January 2007, when the plaintiff was 17 years old, the plaintiff learned that her "No Easy Way Out" photograph was being used without her permission to market a pornographic movie (see Pl. Ex. 12). The plaintiff received through the deviantART message system an anonymous note

-3-

alerting her to the use of her photograph. The message included an internet link to a website that revealed the plaintiff's photograph on the cover insert of the pornographic movie DVD "Body Magic" (see Pl. Ex. 14). The plaintiff stated that, based on the movie's description, it was evident that it was pornography.

The plaintiff testified that she was shocked, disgusted, and ashamed when she saw the innocent image that she took of herself at age 14 associated with a pornographic movie. The plaintiff testified that no one sought her permission to use her photograph in this manner, and that, if asked, she would not have allowed it. Further, the plaintiff stated that she had no involvement with the Body Magic movie, or the adult movie industry in general.

The plaintiff immediately did a Google word search of Body Magic on the computer. The first website that appeared was titled "Hustler," and she sent the company on January 29, 2007, an e-mail informing it that the image on the cover insert of the Body Magic DVD was a stolen photograph of herself at age 14 (Pl. Ex. 15). She stated that she was "absolutely disgusted that [they] used [her] artwork for such a subject" and

-4-

that she "had no clue" that it was being used in such a way (id.). She told

Hustler to remove all of the DVDs until the movie cover was replaced (id.).

Hustler responded to the plaintiff that the company who produced Body

Magic was TVX Home Video (id.).

   Consequently, the plaintiff went to the TVX website. The

plaintiff stated that the TVX website was graphic, and it was apparent that

they produce pornographic movies (see Pl. Ex. 27). The plaintiff testified that

she was ashamed of having to research this information and look at these

websites.

   The TVX website listed an e-mail address for "Bob @

tvxfilms.com" (see id.). Defendant Robert Burge, TVX's president, received

e-mails sent to this address (Pl. Ex. 46, pp. 16, 186). On January 29, 2007,

the plaintiff sent an e-mail, similar to the e-mail she sent Hustler, stating that

the photograph on the packaging of the Body Magic DVD is a stolen portrait

of herself (Pl. Ex. 17). She included the website link to the original picture on

deviantART (id.). Additionally, she stated (id.):

> I am absolutely disgusted that you've used my
> artwork for such a subject– I was fourteen at the
> time when the picture was taken and I had no clue
> until today you were using it in such a way. You're

> also selling my picture to advertise your film. I
> want you to remove all of the DVDs out of
> shops/online etc until you replace the cover,
> otherwise I will have to press charges against you.
> My parents are disgusted with this too and will do
> all they can to help me with this case.

In response to her e-mail, Burge stated (Pl. Ex. 18):

> First let me tell you my company does not steal
> photos.
> All of our artwork is outsourced to another
> company who I have been doing business with for
> 25 years.
> You're a first. So I doubt they stole it either.
> I have sent them your email and have asked them
> to fully investigate your claim.
> To date their have only been a couple hundred
> dvd's sold throughout the world so the picture is of
> little importance so I'll be glad to have them
> change the art.
> However I must allow the company involved to
> handle this.
> We are sorry for any inconvenience.
> Please call me if you have any questions @ 888-
> 877-9993

The plaintiff testified that she was extremely upset when she learned that a

couple hundred of these movies had been distributed because it would be

harder to remove the images from circulation. She was also insulted by

Burge's comment that her photograph was of "little importance."

On February 2, 2007, the plaintiff sent Burge two e-mails. One

e-mail stated (Pl. Ex. 19):

> I've been speaking to my solicitor and feel I should
> be compensated for the use of my photograph in
> this way, I also want a written confirmation that
> none of my images will be used again on your
> videos.

In the other e-mail (id.), she requested Burge provide her with "the name of

the company that provided you with the image with contact details if any

(website, phone number, email etc)." Burge responded by e-mail that day,

stating (Pl. Ex. 20):

> Not only will you not be compensated for your
> photo we have turned this problem over to our
> attorney it seems the company my graphic
> company got the photo from on the internet is a
> public domain operation. You knew this when you
> originally sent us your scheming letter. Nice try
> toots. We are still going to remove you from the
> art, not because of your claim but let's face it your
> picture means very little to the film.

The plaintiff said that this response, which accused her of acting improperly,

was threatening and scared her. She replied to Burge that (Pl. Ex. 21):

> This is the only place the picture is uploaded -
> www.larafairie.deviantart.com/gallery (towards the
> end).

> If people decided to steal my work and post it on
> different sites it's not my problem, your company
> should do more research into where the image has
> originally come from.
> All of these emails you have replied to will be
> recorded for my lawyer and I will be in touch.

Burge then responded by e-mail that (Pl. Ex. 22, capitals and typographical

errors in original):

> MY COMPNAY DOE S NOT MAKE THE ART...
>
> THE COMPANY THAT DOE S MY ART DID
> DO THE RES EARCH.  THAT'S WHY THEY
> KNOW IT'S IN THE PUBLIC DOMAIN....
>
> WE HAVE ALREADY CONFIRMED YOUR
> FACE AND IMAGE WILL BE TAKEN OF THE
> DVD INS ERT PAGE AND MY WEBS ITE.
>
> A S SOON A S THE ART HAS BEEN
> REPRINTED WE WILL THEN S END IT TO
> ALL OUR DIS TRIBUTORS AND HAVE THEM
> RETURN ANY PRODUCT ON THEIR S HELFS
> S O THAT WE CAN REMOVE THE DVD
> COVER.
>
> I'M SURE BY THE END OF THE MONTH
> YOUR FACE WILL BE HIS TORY. WE HAV S
> TOPPED S ELLING THE DVD UNTIL COVER
> IS REPLACED.   WE HAVE FURTHER
> CHECKED OUT YOUR NAME AND ITS NOT
> LIKE IT'S A HOUS E WHOLE NAME.
> ACTUALLY, REMOVING YOUR IMAGE WILL

HELP IMPROVE THE S ELL OF THE DVD..... S
O FAR IT BOMBED.

On February 3, 2007, the plaintiff replied (Pl. Ex.
24)(typographical and grammar errors in original):

> Then I could I have the companies name & contact
> details. I did ask you this from the start but you
> were the one being rude to me.
> This isn't about money, I was disgusted that you
> were using my photograph for such an awful
> subject.

Burge responded, "You will have to talk to the graphic artist involved I have
forwarded your request to him" (Pl. Ex. 25).

In this regard, Burge testified at his deposition that A.J. Cohen,
from A.J. Cohen Studios, was hired to select the art for the Body Magic
movie packaging (see Pl. Ex. 31; Pl. Ex. 46, pp. 53, 74). Burge stated that,
after receiving the plaintiff's e-mail, he gave Cohen "48 hours to either
change the art or show [him] where he got it from" (Pl. Ex. 46, p. 75). Cohen
sent him within days a new photograph to replace the plaintiff's image on
cover insert and disc art for Body Magic (id.; Pl. Ex. 40).

On March 2, 2007, Burge sent the plaintiff an e-mail stating,
"[l]ike we said you have been expurgated from our dvd cover" (Pl. Ex. 23,

see also Pl. Ex. 40).   Furthermore, Burge testified that he recalled from

distributors the infringing DVDs and destroyed all of his inventory of

infringing Body Magic DVDs and cover inserts (Pl. Ex. 46, pp. 123-24).

      The plaintiff also received on March 2, 2007, an e-mail from A.J.

Cohen, who stated (Pl. Ex. 26):

> I am the artist who found the image [of you] on the
> internet.
> The image in question was obtained from a free
> usage pic site last October, which hosts
> (supposedly) public domain images for all uses. In
> all sincerity, I do not remember the url of the site
> but I will be happy to hunt it down for you.  On
> behalf of TVX, I sincerely apologize for any
> disrespectful usage and intent concerning your
> image.  There was only the only image that was
> used, one time, for the one cover.
> Your image has been immediately removed from
> any TVX DVD packaging, DVD face art, website
> as well as having all sales personnel instructed to
> stop selling it immediately.
> Again, my sincerest apologies, it was never my nor
> TVX's intention to purposefully disgrace nor steal
> your image whatsoever.

      The plaintiff said that Cohen's e-mail – which refers to her

photograph on the "DVD face art" – was when she first learned that her

photograph was not only on the cover insert of the Body Magic DVD

package, but also on the Body Magic disc itself.

The plaintiff testified that this experience has been deeply distressing and humiliating. Thus, the plaintiff stated that she was ashamed that one of her first self-portraits was used on the packaging of a pornographic movie. This, in addition to the steps she took to stop the defendants' use of her image, i.e., looking at pornographic websites, communicating with strangers, and being insulted by Burge, caused her to become depressed. The situation also caused stress and problems with her family and friends. Consequently, she had trouble sleeping and eating, and she gave up photography for several months.

Furthermore, from a professional standpoint, she was concerned that her association with a pornographic movie would harm her career as a fashion photographer. In fact, the plaintiff testified that there are companies with whom she has had to explain this situation, and Canon camera company will not consider employing her as a model or photographer until this case is resolved.

Moreover, Body Magic DVDs with the plaintiff's photograph remain in circulation. In this connection, evidence was presented that 1,000 copies of the Body Magic DVDs, and 2,000 Body Magic DVD cover inserts,

with the plaintiff's image were produced (see Pl. Exs. 32, 33; Pl. Ex. 46, pp. 48, 80). Burge's undisputed testimony is that he destroyed 811 of the discs (Pl. Ex. 46, pp. 85, 123-24). Thus, approximately 189 of the Body Magic DVDs with the plaintiff's image remain in circulation. Furthermore, in May and June 2007, the plaintiff's attorney was able to purchase Body Magic DVDs with the plaintiff's photograph on the disc (see Pl. Exs. 41-43).

On July 31, 2007, the plaintiff filed this lawsuit against Burge, Televised Visual X-Ography, Inc. ("TVX"), and several other companies that were allegedly distributors or retailers of the Body Magic DVD (Doc. 1; see also Docs. 20, 86).[1] The plaintiff alleges in her second amended complaint against TVX and Burge claims of direct, contributory, and inducement of copyright infringement; statutory and common law misappropriation of her image; defamation by implication; conspiracy to commit defamation and to misappropriate; and intentional infliction of emotional distress (Doc. 86).

The plaintiff moved for entry of defaults against TVX and Burge based on their failure to respond to her Second Amended Complaint and

---

[1]By commencement of the trial, TVX and Burge were the only remaining defendants. The plaintiff had voluntarily dismissed the other defendants (Docs. 18, 34, 44, 54, 57, 115, 118).

TVX's failure to obtain corporate counsel (Docs. 62, 89). The court granted the motions for entry of default pursuant to Rule 55(a), F.R.Civ.P., and the Clerk accordingly entered defaults against them (Docs. 64, 65, 90, 91). After the parties consented to my jurisdiction (Docs. 76, 77), Burge and TVX filed a Motion to Set Aside the Defaults (Doc. 92). The court heard oral argument on this motion and, after due consideration, denied the motion (Docs. 97, 98).

The plaintiff subsequently filed Motions for Final Default Judgment pursuant to Rule 55(b), F.R.Civ.P., and requested a trial to establish her unliquidated damages (Doc. 99). In a supplemental memorandum on liability, the plaintiff abandoned her claims of inducing copyright infringement, conspiracy to misappropriate, and conspiracy to commit defamation by implication (Doc. 107, pp. 17, 23, 29).

On May 6, 2010, the court issued an Order scheduling a non-jury trial on damages for July 21, 2010 (Doc. 110).[2] After the trial, the plaintiff,

---

[2]Defendants Burge and TVX were sent notice of this Order on May 7, 2010. On July 16, 2010, less than one week before trial, the court received a motion from the defendants to postpone the hearing on damages and for permission to file a written response in lieu of an appearance at trial (Doc. 111). That motion, which was opposed by the plaintiff, was denied because it did not state adequate cause for an indefinite continuance of the trial (see Docs. 112, 113).

in accordance with the court's order, filed a memorandum of law setting forth her damage calculations (Doc. 121).

II.

The plaintiff has established the defendants' liability on her claims of direct copyright infringement, statutory misappropriation of her image, and defamation by implication. However, the plaintiff has failed to prove contributory infringement, or satisfy the stringent standard necessary to establish a claim of intentional infliction of emotional distress. Furthermore, she affirmatively abandoned her claim for "Conspiracy to Commit Defamation by Implication" (Doc. 107, p. 29).

With regard to the plaintiff's successful claims, the defendants' "default[s have] not [been] treated as ... absolute confession[s] by the defendant[s] of [their] liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975). However, by defaulting, the defendants are deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). In this case, the allegations in the second amended complaint, and the plaintiff's trial

-14-

evidence, satisfy each element of the plaintiff's claims for direct copyright infringement, defamation by implication, and statutory misappropriation of image. Accordingly, final judgment as to liability will be entered on those claims. See id.

Furthermore, during the trial, the plaintiff testified in an articulate and convincing manner regarding the events giving rise to this lawsuit, including the emotional distress, humiliation, impaired relationships, and damage to her reputation caused by the defendants' conduct. I find that the plaintiff's testimony was fully credible; it was presented in a straightforward manner without embellishment or histrionics. This does not mean, however, that the plaintiff's subjective assessment of the value of her injuries will be accepted uncritically. As discussed below, I therefore find that she is entitled to an award of damages totaling $129,173.20.

A. Copyright Infringement.

"To establish a prima facie case of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232-33 (11th Cir. 2010). The defendants'

unauthorized use of the plaintiff's original self-portrait "No Easy Way Out" on the cover insert and disc art ("packaging") of their pornographic movie DVD Body Magic constitutes direct copyright infringement.[3]

Pursuant to 17 U.S.C. 504, a copyright infringer is liable for the copyright owner's actual damages and any additional profits of the infringer that are not taken into account in computing the actual damages.[4] The plaintiff seeks an award of damages for copyright infringement totaling $4,249, which comprises $3,077 in actual damages and $1,172 in infringer's profits (Doc. 121, pp. 2-6).

1. Actual damages

The plaintiff's actual damages are based upon a licensing fee she charges for use of her photographs (id., pp. 3-5). In appropriate circumstances, a "reasonable license fee," that is, the fair market value of a

---

[3]The plaintiff did not register her copyright in the photograph "No Easy Way Out" (Doc. 121, p. 3, n.1). Although copyright registration is generally required for ownership of a valid copyright, it is not necessary for works originating in England, a signatory country to the Berne Convention. See The Football Assn. Premier League, Ltd. v. YouTube, Inc., 633 F.Supp.2d 159, 163-64 (S.D.N.Y. 2009).

[4]The Copyright Act also provides for awards of statutory damages and attorney's fees. See 17 U.S.C. 504(a)(2), 505. However, as the plaintiff acknowledges (Doc. 121, p. 3 n.1), she is not eligible for this relief because "no award of statutory damages or of attorney's fees ... shall be made for" unregistered works. 17 U.S.C. 412.

license authorizing defendants' use of the copyrighted work, may be awarded as actual damages under the Copyright Act. See On Davis v. The Gap, Inc., 246 F.3d 152, 166-68 (2nd Cir. 2001); McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003).

Although a licensing fee in this case is somewhat hypothetical because the plaintiff would not have licensed her photograph for use in this manner, this measure of damages is appropriate because the defendants used the plaintiff's copyrighted photograph, and she is entitled to be compensated for its use. See On Davis v. The Gap, Inc., supra, 246 F.3d at 172 ("The hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner. The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license."); McRoberts Software, Inc. v. Media 100, Inc., supra, 329 F.3d at 567 (a licensing fee is an appropriate measure of damages absent evidence that the parties would have contracted for the plaintiff's products because the plaintiff "is entitled under the Copyright Act to recover actual damages resulting from the infringement of its copyright").

In this regard, the plaintiff presented at trial uncontroverted evidence that she charges licensing fees for use of her photographs, including the "No Easy Way Out" photograph. In support of her request for a licensing fee of $3,077, the plaintiff presented evidence that she received a £2000 licensing fee from book publisher Harper Collins to use her photography on its book cover (see Pl. Ex. 8). The plaintiff asserts that this £2000 licensing fee is equivalent to $3,077 in U.S. dollars[5] (Doc. 121, p. 4).

The plaintiff's receipt of a £2000 licensing fee to use her photograph on a book cover is analogous to the defendants' use of the plaintiff's photograph on the cover (and disc art) of their DVD movie. Furthermore, there is nothing in the record controverting the reasonableness of this amount. Therefore, the plaintiff will be awarded $3,077 in actual damages based on the loss of a licensing fee.

2. Infringer's profits

Additionally, the plaintiff requests an award of the defendants' profits from the sale of the infringing Body Magic movie DVD. Since the

---

[5]According to the plaintiff, the conversion rate in 2010 has varied from .61 to .70 (Doc. 114; Doc. 121, p. 4). The plaintiff suggested, reasonably enough, the use of a .65 conversion rate in this case.

plaintiff's licensing fee does not take into account the defendants' profits from the movie, she is entitled to these profits as well. See 17 U.S.C. 504(b).

In establishing the infringer's profits, the copyright owner is required to present proof of the infringer's gross revenue. Id. The infringer is then "required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

The plaintiff alleges that the defendants' profits totaled $1,171.97 (Doc. 121, p. 6). This calculation is based on the defendants' sale of 234 Body Magic DVDs at a price of $5 or $8 each (id., p. 5; see Pl. Exs. 35-38). The plaintiff deducted from that sum estimated production costs of 70 cents per DVD (Doc. 121, p. 6), although it was not her obligation to do so. See 17 U.S.C. 504(b).

The plaintiff's contention that the defendants sold 234 Body Magic DVDs is based upon an unreliable "TVX Home Video Inventory Item Quick Report" (Doc. 121, p. 5, citing Pl. Ex. 39). Thus, the sum of the sales and credits on the inventory report does not equal the 1,000 copies of the movie produced by the defendants (Pl. Ex. 39). Furthermore, the plaintiff's sales figure does not account for movie returns identified in the inventory

report (see Pl. Ex. 39; Pl. Ex. 46, pp. 85, 124). Thus, the plaintiff's sales calculation is clearly flawed.

A more reliable computation of sales is to subtract the number of Body Magic DVDs that Burge allegedly destroyed (811) from the number of copies he produced (1,000) (see Pl. Exs. 32, 39; Pl. Ex. 46, pp. 123-24). This calculation reflects sales of 189 Body Magic DVDs. At an average sale price of $6.50 per disc, the gross profit is $1,228.50. After deducting the infringer's estimated costs of 70 cents per disc ($132.30), the compensable infringer's profit is $1,096.20.[6]

Accordingly, the plaintiff will be awarded on her direct copyright infringement claim damages of $4,173.20, comprising actual damages of $3,077, and infringer's profits of $1,096.20.

B. Contributory Copyright Infringement

The plaintiff has also alleged a claim of contributory infringement. A contributory infringer is "one who, with knowledge of the infringing activity, induces, causes[,] or materially contributes to the

_____

[6] It was the defendants' burden to show its costs. Therefore, although the plaintiff did not explain how it determined the defendants' cost of 70 cents per disc, that amount will be accepted.

infringing conduct of another." <u>Cable/Home Communication Corp.</u> v. <u>Network Productions, Inc.</u>, 902 F.2d 829, 8456 (11th Cir. 1990). The plaintiff alleges that the defendants are liable for contributory copyright infringement based on their sale of infringing Body Magic DVDs to retailers and distributors (Doc. 86, ¶¶ 36-44, 64-69; Doc. 107, pp. 9-16).

However, the plaintiff has not shown that the defendants had knowledge of the infringement when they distributed the infringing Body Magic DVDs to retailers and distributors. <u>See</u> <u>Cable/Home Communication Corp.</u> v. <u>Network Productions, Inc.</u>, <u>supra</u>. Thus, the plaintiff merely asserts conclusory allegations and legal conclusions that the defendants had "knowledge of the infringing activity" and that their infringing "conduct ... [was] willful and intentional" (Doc. 86, ¶¶ 64, 69). <u>See</u> <u>Buchanan</u> v. <u>Bowman</u>, <u>supra</u>, 820 F.2d at 361 (upon default, only "well-pleaded allegations of fact" are deemed admitted). Further, these allegations are contradicted by the undisputed evidence that the defendants ordered the infringing Body Magic packaging in November 2006, and they were unaware of the infringement until the plaintiff notified them in January 2007, at which

time they immediately took steps to cease use of the plaintiff's photograph (see Pl. Exs. 17, 18, 32, 33, 34).

Furthermore, an award of damages on this claim would constitute an impermissible double recovery. Thus, the compensatory damages requested under this claim mirror those for which she is receiving compensation under her direct copyright infringement claim (Doc. 121, p. 2), and the plaintiff has made no attempt to distinguish them as separate injuries. See Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2nd Cir. 1997), cert. denied, 519 U.S. 1041 (1996)("A plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery."). Therefore, the plaintiff failed to establish liability or damages on the contributory infringement claim.

C. Statutory Misappropriation of Image

The plaintiff also claims that the defendants misappropriated her image, in violation of Fla. Stat. §540.08. That statute provides, in pertinent part:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any

> natural person without the express written or oral
> consent to such use given by [such person].[7]

The undisputed evidence shows that the plaintiff's self-portrait was placed,

without her permission, prominently on the packaging of the Body Magic

DVD for the purpose of marketing a pornographic movie with which she had

no association.  These facts constitute a violation of this statute.  See, e.g.,

Gritzke v. M.R.A. Holding, LLC, No. 4:01CV495-RH, 2002 WL 32107540

(N.D. Fla.) (unauthorized use of a woman's image on the cover of a "Girls

Gone Wild" video violates Fla. Stat. §540.08).

Fla. Stat. §540.08(2) provides that a prevailing plaintiff may

recover: (1) "damages for any loss or injury sustained by reason ... [of the

misappropriation,] including an amount which would have been a reasonable

royalty," and (2) punitive or exemplary damages.  The plaintiff requests

compensatory damages of $770 for a "licensing fee," and $25,000 for harm

---

[7]The statute is construed as requiring that the unauthorized use of the person's image
"directly promote the product." Tyne v. Time Warner Entm't Co., L.P., 901 So.2d 802, 808
(Fla. 2005). Therefore, courts have found that merely including the misappropriated image
in a publication that is sold for profit is insufficient; rather, the harm emanates from "the
way that the use associates the person's [likeness] with something else." Id.

to her professional reputation (Doc. 121, pp. 2, 9). Additionally, she seeks $25,000 in punitive damages (id.).

1. Compensatory damages

The plaintiff's request for a $770 licensing fee (id., p. 2) is not well-taken because the plaintiff has already been compensated for the loss of a licensing fee in connection with her copyright infringement claim, and the plaintiff has not distinguished this licensing fee as a separate injury. Therefore, because recovery of a licensing fee under this claim would constitute an impermissible double recovery, it is denied. See Indu Craft, Inc. v. Bank of Baroda, supra, 47 F.3d at 497 (a plaintiff may not recover damages twice for the same injury simply because she has two legal theories); see, e.g., Besett v. Basnett, 437 So.2d 172, 173 (Fla. App. 1983).

On the other hand, the plaintiff has shown that she is entitled to $25,000 for harm to her reputation caused by the defendants' misappropriation of her photograph (Doc. 121, p. 9). Harm to reputation caused by the misappropriation of a plaintiff's likeness is a compensable damage. See Restatement Second of Torts, §652H, pp. 401-02, comment a; see, e.g., Clark v. Celeb Publishing, Inc., 530 F.Supp. 979, 983-84 (D.C. N.Y.

-24-

1981)(damages awarded to a model whose photographs were used in a pornographic magazine without her authorization and resulted in the loss of modeling jobs).

The plaintiff, a professional photographer and model who has no association with the pornographic industry, has suffered harm to her professional reputation due to the defendants' unauthorized use of her photograph on the packaging of a pornographic movie DVD. Specifically, the plaintiff testified that her photograph has been recognized on the packaging of Body Magic and, consequently, she has had to explain this situation to potential clients. Furthermore, she stated that she has not been hired by at least one major client because her photograph appears on the packaging of a pornographic movie DVD. Thus, the plaintiff testified that Canon, a famous camera manufacturer, has declined to employ her as a model or photographer pending resolution of this case.

Under the totality of these circumstances, $25,000 compensation for harm to the plaintiff's reputation is reasonable. Although the plaintiff has not established $25,000 in lost jobs due to this circumstance, it is well-established that "proof of actual harm need not be of pecuniary loss." See

Restatement Second of Torts, §652H, p. 402, comment *c*. As summarized in

Lugosi v. Universal Pictures, 603 P.2d 425 (Sup. Ct. Calif. 1979):

> Often considerable money, time and energy are
> needed to develop one's prominence in a particular
> field.... For some, the investment may eventually
> create considerable commercial value in one's
> identity.... The loss may well exceed the mere
> denial of compensation for the use of the
> individual's identity. The unauthorized use disrupts
> the individual's effort to control his public image,
> and may substantially alter that image.

Here, it is undisputed that the defendants' misuse of her photograph has

tarnished the plaintiff's image and disrupted her ability to control that image.

Therefore, the plaintiff will be awarded $25,000 compensation for harm to her

reputation caused by the plaintiff's violation of Fla. Stat. §540.08.

### 2. Punitive damages

The plaintiff asserts, in a conclusory manner, that she is entitled

to $25,000 in punitive damages pursuant to Fla. Stat. §540.08(2) (Doc. 121,

p. 9). Although the defendants' unauthorized use of her self-portrait clearly

violates Fla. Stat. §540.08, their misconduct does not meet the "high

standard" necessary for the imposition of punitive damages. Weinstein

Design Group, Inc. v. Fielder, 884 So.2d 990, 1001 (Fla. App. 2004).

-26-

Thus, "punitive damages are reserved for particular types of behavior which go beyond mere intentional acts." Id.; Genesis Publications, Inc. v. Goss, 437 So.2d 169, 170 (Fla. App. 1983). Such an award requires evidence of "intentional, wanton and malicious disregard" for the plaintiff's rights. Genesis Publications, Inc. v. Goss, supra, 437 So.2d at 170 (citing Winn & Lovett Grocery Co. v. Archer, 171 So.2d 214, 221 (Fla. 1936)). In this context, a significant consideration is whether the defendant knew that it lacked permission to use the plaintiff's image. See Weinstein Design Group, Inc. v. Fielder, supra, 884 So.2d at 1001; Sun Int'l Bahamas, Ltd. v. Wagner, 758 So.2d 1190, 1191 (Fla. App. 2000); Genesis Publications, Inc. v. Goss, supra, 437 So.2d at 170-71.

The plaintiff has not shown that the defendants' conduct warrants punitive damages because there is no evidence that the defendants knowingly infringed the plaintiff's rights. To the contrary, the defendants did not even choose the plaintiff's photograph for the Body Magic DVD packaging; rather, the defendants employed A.J. Cohen Studios for this purpose (Pl. Exs. 18, 22, 31; Pl. Ex. 46, pp. 52-53, 74).[8] See Genesis

---

[8]Cohen stated that he discovered the plaintiff's photograph on a free usage picture website which hosts public domain images for all uses (Pl. Ex. 26).

Publications, Inc. v. Goss, supra, 437 So.2d at 169 (a magazine's publication of a nude photograph of the plaintiff in an advertisement without her permission did not warrant punitive damages because the defendant had relied on advertising agencies to obtain the necessary permission for use of the photographs). Furthermore, the undisputed evidence is that the defendants did not learn of the infringement until the plaintiff contacted them in January 2007, ten months after they produced the Body Magic DVDs (see Pl. Exs. 18, 33, 34; Pl. Ex. 46, p. 75).

The absence of malicious intent is underscored by Burge's attempts to remediate the situation when he learned of the infringement. Thus, Burge changed the photograph on the Body Magic packaging and recalled from distributors infringing Body Magic DVDs (see Pl. Exs. 18, 22, 23, 26, 40; Pl. Ex. 46, pp. 75, 85, 123). Furthermore, Burge testified that he destroyed by fire all 811 infringing discs in his possession, and tore up all of the infringing cover inserts (Pl. Ex. 46, pp. 123-24).[9]

---

[9]The plaintiff emphasizes that her counsel was able to purchase in June 2007 Body Magic movie DVDs with her photograph on the disc art. However, the plaintiff has failed to show that the defendants themselves, as opposed to distributors, continued to sell the infringing DVDs after they received notice of their violation since approximately 200 discs remained in circulation.

-28-

In sum, punitive damages are not warranted because the evidence does not show that the defendants acted in "intentional, wanton, and malicious disregard" for the plaintiff's rights when they used her self-portrait on the packaging of their pornographic movie DVD.   See Genesis Publications, Inc. v. Goss, supra.   At most, the   defendants' conduct constitutes negligence for failing to confirm that the photograph was in the public domain for free use. Accordingly, the plaintiff's request for punitive damages is denied.

### D. Common Law Misappropriation of Image

The   plaintiff's   complaint   also   alleges   common   law misappropriation of her image (Doc. 86, pp. 33-35). The plaintiff may assert common law and statutory claims for misappropriation in the same action. Almeida v. Amazon.com, Inc., 456 F.3d 1316,1320 n.1 (11th Cir. 2006). Furthermore,   the elements establishing both claims   "are substantially identical." Id. Therefore, based on the analysis of the plaintiff's statutory claim of misappropriation, supra, the defendants are also liable for common law misappropriation of the plaintiff's image.   However, the plaintiff has failed to establish that she is entitled to any damages under this claim.

The plaintiff seeks $25,000 in compensatory damages for the defendants' misappropriation of her photograph (Doc. 121, pp. 2, 10). It is unclear, however, whether this compensatory damage is distinct from the compensatory damage she is receiving for harm to her reputation under the statutory misappropriation claim.

Thus, the plaintiff merely asserts in a conclusory manner that "$25,000 would be reasonable compensation for the misappropriation of her likeness by the Defendants" (id., p. 10). If this claim is distinct from the injury asserted in her statutory misappropriation claim, it is denied because the basis for such an award is not explained.

To the extent that the plaintiff is seeking damages for harm to her reputation, it is denied as an improper double recovery, as she already has been awarded $25,000 for that injury. See Atl. Coast Line R. Co. v. Saffold, 178 So. 288, 290 (Fla. 1938)("Double damages are not legally recoverable"). Thus, as previously indicated, the plaintiff may not recover damages twice for the same injury simply because she has two legal theories. See, e.g., Besett v. Basnett, supra, 437 So.2d at 173.

The plaintiff may be suggesting that she is entitled to a double recovery based upon Fla. Stat. §540.08(7), which provides that, "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her ... privacy" (see Doc. 121, p. 10). However, the language of this statute does not authorize a double recovery, and the plaintiff has not cited any legal authority supporting such a construction of this statute. Rather, this statutory provision allows a plaintiff to assert statutory and common law claims for invasion of privacy in the same action without abridging the types of remedies available under the common law. See Almeida v. Amazon.com, Inc., supra, 456 F.3d at 1325 ("The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation"); Loft v. Fuller, 408 So.2d 619, 622 (Fla. App. 1981)("By enacting Section 540.08, the Florida Legislature has amplified the remedies available for ... commercial exploitation of the property value of a person's" likeness). In sum, the plaintiff has failed to show that she is entitled to recover damages under her common law claim for misappropriation of her image because she has not

stated the basis for this claim, and an award for harm to her reputation would constitute an impermissible double recovery.

### E. Defamation by Implication

The plaintiff has also asserted a claim for "defamation by implication," which is a tort recognized under Florida law. See Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098, 1108 (Fla. 2008). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication." Id. at 1106. The defendants' unauthorized use of the plaintiff's self-portrait on the packaging of a pornographic movie, which improperly suggests the plaintiff's participation in, or her willing association with, the pornographic industry, constitutes defamation by implication. See id.

The plaintiff alleges that $100,000 is "fair compensation for the humiliation she suffered as a result of having her photograph used in connection with the 'Body Magic' pornographic movie and related marketing

materials" (Doc. 121, p. 12).  She also seeks $25,000 punitive damages (id., p. 13).

1. Compensatory damages

A plaintiff who prevails on a defamation claim may recover damages for "shame, humiliation, mental anguish, and hurt feelings experienced in the past or to be experienced in the future."  Florida Standard Jury Instructions, Instruction MI 4.4., p. 1; see also Restatement Second of Torts, §621, p. 320, comment *b* ("actual injury" includes "personal humiliation, and mental anguish and suffering").

At trial, the plaintiff testified in a credible and convincing manner that the unauthorized use of her photograph on the packaging of Body Magic was humiliating and distressing, and caused her to become depressed.  Thus, the plaintiff testified credibly that she was "shocked, disgusted, and ashamed" when she saw the image that she took of herself at age 14, innocently playing dress-up, being used in association with a pornographic movie.  Further, she testified with emotion, but without histrionics, to the stress and problems it caused with her family and friends.  She also worried that being associated with a pornographic movie would

-33-

harm her career as a fashion photographer.   Moreover, the plaintiff's humiliation and distress was compounded by Burge's offensive and belittling e-mail responses to the plaintiff, in which he demeaned her talent and accused her of, among other things, attempting to scam him (Pl. Exs. 18, 20, 22). Consequently, the plaintiff gave up photography for several months, and she had trouble sleeping and eating.

The plaintiff's requested award of $100,000 is reasonable and adequate compensation for this harm. Compare Fleming v. Gadsden County Times, 1988 WL 500044 (Fla.Cir.Ct.1988) (jury award of $865,000 in compensatory damages for a newspaper article linking the plaintiff and his company to a federal criminal investigation); Destefano v. Adventist Health System Sunbelt, 973 So.2d 492 (Fla. App. 2007) (upholding a one-million dollar compensatory damage award for defamatory remarks that the plaintiff inappropriately kissed his mother and improperly laid with her on her hospital bed). Thus, the defamation caused the plaintiff personal and professional humiliation, and it was severe enough to harm her career, and impair the plaintiff's physical health and relationships with family and friends.

Accordingly, the plaintiff will be awarded $100,000 for the humiliation and mental anguish caused by the defendants' defamatory use of her self-portrait.

### 2. Punitive damages

The plaintiff also seeks an award of $25,000 in punitive damages for the defamatory use of her photograph (Doc. 121, p. 13). Punitive damages for defamation are compensable upon a showing that the defendants' "primary purpose" in engaging in the defamatory act "was to indulge ill will, hostility, and an intent to harm." Florida Standard Jury Instruction MI 4.4., pp. 3-4. However, as discussed in connection with the plaintiff's request for punitive damages under Fla. Stat. §540.08, the evidence unquestionably does not support such finding because the defendants were unaware of the violation when they produced the infringing Body Magic packaging. See Florida Standard Jury Instruction MI 4.4., pp. 3-4. Therefore, the plaintiff's request for punitive damages is denied.

### F. Conspiracy to Commit Defamation by Implication

The plaintiff has, in her most recent submission, requested damages of $125,000 for "Conspiracy to Commit Defamation by Implication" (see Doc. 121, p. 2). This appears to be an error, because the plaintiff

-35-

affirmatively abandoned that claim in her supplemental memorandum regarding liability (Doc. 107, p. 29) ("Count VIII-Conspiracy to Commit Defamation by Implication. Plaintiff hereby abandons and drops the claim set forth in Count VIII of the Second Amended Complaint"). Therefore, to the extent that the plaintiff sought a separate award of damages for "Conspiracy to Commit Defamation by Implication," it is denied.

G. Intentional Infliction of Emotional Distress

The plaintiff's final claim is intentional infliction of emotional distress. The elements of this claim are: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Thomas v. Hospital Bd. of Directors of Lee County, 2010 WL 1816251 at *8 (Fla. App. 2010). The Florida Supreme Court has repeatedly affirmed that, to sustain this claim, the conduct must be "so outrageous in character, and so extreme in degree" that it is considered "atrocious ... and utterly intolerable in a civilized community." Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985). Thus, "it is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it

is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm Mut. Auto Ins. Co. v. Novotny, 657 So.2d 1210, 1213 (Fla. App. 1995).

The defendants' actions unquestionably do not rise to this level of misconduct because the defendants were unaware that they were violating the plaintiff's rights when her photograph was selected for the Body Magic packaging.[10] Nonetheless, the plaintiff argues that the defendants' conduct is sufficiently outrageous because the defendants allegedly "took what they had to know was a reasonably recent photograph ... of an obviously young woman and used it as the cover art, face art and online marketing material for their pornographic movie" (Doc. 121, p. 14). The defendants' use of a picture of a "young woman" for the package of a pornographic movie does not, in itself, constitute outrageous conduct.

Furthermore, to the extent the plaintiff insinuates that the defendants knew the photograph was of a minor girl when they selected it for the packaging of Body Magic, that assertion is not supported by any evidence.

---

[10]For this reason, the defendants' use of the plaintiff's photograph also does not satisfy the element of "deliberate or reckless infliction of mental suffering." Thomas v. Hospital Bd. of Directors of Lee County, supra.

In this regard, the plaintiff cites to a January 29, 2007, e-mail to Burge, in which she tells him that the photograph is a self-portrait taken when she was 14 years old (see Doc. 121, p. 14); however, that e-mail was sent long after the plaintiff's photograph was reproduced on the packaging of the Body Magic DVD (see Pl. Exs. 17, 33, 34). Moreover, it is not apparent from looking at the picture that the female is a minor.

The plaintiff argues further the defendants' failure to obtain express consent from the plaintiff for the use of her photograph, or attempt to determine her identity, was outrageous (Doc. 121, p. 15). Under the circumstances of this case, these contentions do not amount to more than negligence.

Finally, the plaintiff makes the unpersuasive argument that defendant Burge's e-mail responses, in which he accuses the plaintiff of trying to "scam" him and blames the plaintiff for poor sales of the Body Magic movie, magnifies the defendants' misconduct and renders it outrageous (id.). Burge was indisputably insulting and rude in these e-mails. Further, the defendants' conduct, in its totality, was morally wrong and tortious. However, the misconduct still does not "go beyond all bounds of decency and

... [cause] an average member of the community ... to exclaim, 'Outrageous.'"

Metropolitan Life Ins. Co. v. McCarson, supra, 467 So.2d at 279; see, e.g.,

Williams v. Worldwide Flight SVCS., Inc., 877 So.2d 869, 870 (Fla. App.

2004)(racial epithets, forcing the plaintiff to work in dangerous conditions,

and the creation of a false disciplinary record to justify the plaintiff's

termination is "reprehensible, objectionable, and offensive" behavior, but is

not "reasonably regarded as so extreme and outrageous" to state a claim for

intentional infliction of emotional distress). The plaintiff, moreover, does not

cite any apposite legal authority that this conduct is sufficiently outrageous

to state a cognizable claim for intentional infliction of emotional distress.

Therefore, the plaintiff failed to prove her claim of intentional infliction of

emotional distress.

It is, therefore, upon consideration:

ORDERED:

That the plaintiff's Motion for Default Final Judgment of

Liability against Televised Visual X-Ography, Inc., and Robert Augustus

Burge (Doc. 99) is hereby **GRANTED to the extent** that final judgment will

be entered for the plaintiff Lara Jade Coton, and against defendants Televised

Visual X-Ography, Inc., and Robert Augustus Burge, on the plaintiff's claims of direct copyright infringement, defamation by implication, and misappropriation of image pursuant to Fla. Stat. §540.08, in the amount of $129,173.20, with interest thereon in accordance with 28 U.S.C. 1961. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 16th day of September, 2010.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE